IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TAMMY M. TREAT, on behalf of  )
KELLY C. TREAT, deceased,     )
                              )
            Plaintiff,        )
                              )
v.                            )       Case No. CIV-14-494-JHP-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Tammy M. Treat, on behalf of Kelly C. Treat, deceased (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 18, 1961 and was 51 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a marina porter. Claimant alleged an inability to work beginning August 31, 2010 due to limitations resulting from hypertension, osteoarthritis,

anxiety, depression, left shoulder problems, and back pain. Claimant died in an automobile accident on January 19, 2014.

## Procedural History

On June 2, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 15, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Lantz McClain by video with the ALJ presiding from Tulsa, Oklahoma and Claimant appearing in Muskogee, Oklahoma. The ALJ entered an unfavorable decision on April 12, 2013. The Appeals Council denied review on September 16, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in improperly rejecting and weighing the opinion of Claimant's treating physician.

**Evaluation of the Opinion of Claimant's Treating Physician**

In his decision, the ALJ determined Claimant suffered from the severe impairments of fibromyalgia, hypertension, mild facet changes in the cervical spine, minimal spondylitic changes in the lumbar spine, possible mild compression fracture at T12, atherosclerotic vascular disease, history of left shoulder pain, and chronic obstructive pulmonary disease. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform light work except that he must avoid work above shoulder level on the left side. (Tr. 17). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of ticket seller, final inspector, and hand bander, all of which he found to exist in sufficient numbers both regionally and nationally. (Tr. 23). As a result, the ALJ found Claimant was not disabled from August 31, 2010 through the date of the decision. Id.

Claimant contends the ALJ erred by failing to properly consider and weigh the opinions of his treating physician, Dr. Scott G. Lilly. On March 26, 2012, Dr. Lilly completed a medical

source statement on Claimant. He diagnosed Claimant with degenerative disc disease at L-5, bilateral sciatica, neuropathic pain, osteoarthritis, and major depression with a "guarded" prognosis. In his findings on Claimant's functional limitations, Dr. Lilly found Claimant could sit, stand, and walk 10-30 minutes at one time in an 8 hour workday but could do so for less than 2 hours during an entire 8 hour workday. Dr. Lilly also determined Claimant would need to alternate between sitting, standing, and walking every 10-30 minutes. He did not indicate a need for Claimant to elevate his legs. (Tr. 375). Dr. Lilly also found Claimant could infrequently lift and carry up to 20 pounds but never more than that weight. He also stated in his report that Claimant could never squat, crawl, or climb but could infrequently bend and reach. Claimant would have to take unscheduled breaks every 10-15 minutes for rest. Dr. Lilly noted Claimant's ability to work would be limited by pain, medication, fatigue, and weakness. (Tr. 376).

Claimant was found to be markedly limited in the areas of the ability to understand, remember, and carry out very short and simple instructions; ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities

6

within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal work day and workweek without interruption from pain or medication based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 376-77). Dr. Lilly estimated Claimant would be "off task" or the amount of time in the typical workday his symptoms would likely be severe enough to interfere with attention and concentration needed to perform even simple work tasks some 25% or more of the time. He would likely experience "good days" and "bad days" which would require him to be absent from work more than three times per month. (Tr. 377).

The ALJ related the details in Dr. Lilly's report and stated that "[t]he undersigned gives some weight to Dr. Lilly's opinion little weight." He then acknowledged Dr. Lilly as Claimant's treating physician but concluded that "the objective medical evidence does not support Dr. Lilly's opinion in this case." (Tr. 19). Instead, the ALJ gave "great weight" to the opinion of the non-examining medical consultant, Dr. Walter W. Bell, concluding Dr. Bell's opinion is "consistent with and supported by the medical evidence in this case." (Tr. 20).

In his medical records, Dr. Lilly noted that Claimant had been

7

examined by an orthopedic specialist who found Claimant had ankylosing spondylitis versus diffuse idiopathic skeletal hyperostosis ("DISH"). (Tr. 270, 272, 274). To that end, on January 14, 2008, Dr. Guy E. Grooms evaluated Claimant and found he did indeed show significant intervertebral exostosis consistent with DISH or ankylosing spondylitis. Dr. Grooms also found Claimant had a significantly stooped stance but normal gait. He noted significant tenderness to the thoracolumbar area and the left iliac crest. (Tr. 190).

Regarding supporting functional limitations, Dr. Lilly noted Claimant had some decreased flexion in the spine with tenderness over the sacroiliac joints. Dr. Lilly noted that the diagnosis of DISH by Dr. Grooms was unusual because the condition typically occurs in patients over the age of 50. (Tr. 298). This same limitation was noted in April through August of 2010. (Tr. 286, 289, 292, 295). Dr. Lilly discovered tenderness in Claimant's lumbar sacral spine and both sacroiliac joints in September and October of 2011. (Tr. 330-31).

In November and December of 2011 and January of 2012, Dr. Lilly found Claimant experienced crepitance and pain with neck motion. (Tr. 353, 358, 363). In March of 2012, Claimant reported moderate distress and limited ambulation with noted tenderness in

8

the neck and pain with neck motion. (Tr. 349). Objective testing also revealed slight anterior wedging of Claimant's lower thoracic vertebral bodies, decreased range of motion of the lumbar sacral spine, mild spondylosis or degenerative spinal changes at T5-6, and mild compression of Claimant's T12 vertebral body with approximately 10% loss of height and vacuum disc changes at T12-L1. A CT scan also showed anterior osteophytes at L1-2 and a possible disc bulge at L4-5 which likely contacted Claimant's anterior thecal sac. Also, a likely bulge was noted at L5-S1, which also contacted with Claimant's anterior thecal sac. (Tr. 191, 225, 255, 252, 253-54).

The ALJ based his rejection of Dr. Lilly's opinion solely upon the lack of support in the objective medical record. (Tr. 19). The ALJ, however, failed to include which objective findings contradicted Dr. Lilly's findings. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation

omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

10

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ first includes what appears to be a typographical error in attributing both little and no weight to Dr. Lilly's opinion, creating ambiguity. Presuming the ALJ completely rejected Dr. Lilly's opinion based upon the lack of objective medical evidence support, the ALJ's decision lacks specificity in supporting this finding. As noted by this Court, some objective support exists for Dr. Lilly's findings on Claimant's functional limitations. On remand, the ALJ shall re-evaluate Dr. Lilly's opinion and if he maintains his rejection of the opinion, he shall set forth with specificity the evidence which contradicts Dr. Lilly's findings before accepting the opinion of a non-examining, non-treating physician over it. Additionally, the ALJ shall proceed through the Watkins analysis to adequately explain the basis for affording no weight to the decision.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

11

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

     DATED this 8th day of March, 2016.

                                      KIMBERLY E. WEST
                                      UNITED STATES MAGISTRATE JUDGE